UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

SOUTHERN DIVISION

| | |
|---|---|
| GARY MATTHEW SHAVER,<br><br>                    Plaintiff,<br><br>          vs.<br><br>JASON MILLS, Unit Coordinator at<br>South Dakota State Penitentiary in his<br>individual and official capacities;<br>NYREEN, Unit Manager at South<br>Dakota State Penitentiary in his<br>individual and official capacities; and<br>TERESSA BETTINGA,[1] Warden at<br>South Dakota State Penitentiary in her<br>official capacity,<br><br>                    Defendants. | 4:23-CV-04204-KES<br><br>ORDER GRANTING PLAINTIFF'S<br>FIRST MOTION FOR LEAVE TO<br>PROCEED IN FORMA PAUPERIS,<br>DENYING PLAINTIFF'S OTHER<br>VARIOUS MOTIONS, DIRECTING<br>SERVICE, AND 1915A SCREENING |

Plaintiff, Gary Matthew Shaver, an inmate at the South Dakota State
Penitentiary (SDSP), filed a pro se civil rights lawsuit under 42 U.S.C. § 1983.
Docket 1. Shaver filed two motions for leave to proceed in forma pauperis,
Dockets 4 and 6, and provided his prisoner trust account report, Docket 7. He
also filed two motions to appoint counsel, Dockets 12 and 15-1, and a motion
for response, Docket 15.

---

[1] The defendant's name is spelled as Teresa Bittinger. In this order, this court
will refer to the defendant by the correct spelling of her last name.

## I.     Motion to Proceed In Forma Pauperis

Under the Prison Litigation Reform Act (PLRA), a prisoner who "brings a civil action or files an appeal in forma pauperis . . . shall be required to pay the full amount of a filing fee." 28 U.S.C. § 1915(b)(1). The court may, however, accept partial payment of the initial filing fee where appropriate. Thus, "[w]hen an inmate seeks pauper status, the only issue is whether the inmate pays the entire fee at the initiation of the proceedings or over a period of time under an installment plan." *Henderson v. Norris*, 129 F.3d 481, 483 (8th Cir. 1997) (alteration in original) (quoting *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997)).

The initial partial filing fee that accompanies an installment plan is calculated according to 28 U.S.C. § 1915(b)(1), which requires a payment of 20 percent of the greater of

> (A) the average monthly deposits to the prisoner's account; or
> (B) the average monthly balance in the prisoner's account for the 6-month period immediately preceding the filing of the complaint or notice of appeal.

Based on the information regarding Shaver's prisoner trust account, the court grants Shaver leave to proceed in form pauperis (Docket 4) and waives his initial partial filing fee because the initial partial filing fee would be greater than his current balance. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee."). Because this court grants Shaver's first motion for leave to proceed in

forma pauperis (Docket 4), his second motion for leave to proceed in forma pauperis (Docket 6) is denied as moot.

In order to pay his filing fee, Shaver must "make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account." 28 U.S.C. § 1915(b)(2). The statute places the burden on the prisoner's institution to collect the additional monthly payments and forward them to the court as follows:

> After payment of the initial partial filing fee, the prisoner shall be required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. The agency having custody of the prisoner shall forward payments from the prisoner's account to the clerk of the court each time the amount in the account exceeds $10 until the filing fees are paid.

*Id.* The installments will be collected pursuant to this procedure. The Clerk of Court will send a copy of this order to the appropriate financial official at Shaver's institution. Shaver remains responsible for the entire filing fee, as long as he is a prisoner. *See In re Tyler*, 110 F.3d 528, 529–30 (8th Cir. 1997).

## II.     1915A Screening

### A.     Factual Background

#### 1.     Assault

The facts alleged in Shaver's complaint are: that he was assaulted by his prison cellmate, Terrance Burton, because prison employees denied Shaver's requests to move him into a different cell and did not respond after Shaver hit the emergency button. Docket 1 at 5; Docket 1-1 at 6, 8; Docket 9 at 2. Prison mental health officials told Shaver that he should not be housed in a cell with dominating and aggressive people. Docket 1-1 at 6. Shaver wrote to Warden

3

Teresa Bittinger, mental health staff, a lieutenant, a unit coordinator, and a unit manager, informing them that his "Cellie Terrance Burton was threatening [him], bulling [sic] [him], kept accusing [him] of having the door opened up and purposly [sic] moving things around in his locked locker." Docket 1 at 5. *See also* Docket 1-1 at 6. Shaver claims that staff did not reach out, help, or respond after he hit the emergency button when Burton was yelling at Shaver and pushing him against the wall. Docket 1 at 5. On two or three different occasions, Shaver pushed the emergency button because of Burton's behavior toward him. *Id.*; Docket 1-1 at 6; Docket 9 at 2. Guards allegedly told Shaver to talk it out, work it out, and deal with it. Docket 1 at 5; Docket 9 at 2.

Shaver sent Unit Coordinator Jason Mills a kite about the "non-stop threat's, harasment, action's and behavior done by [his] Cellie Terrance Burton." Docket 1 at 6 (grammar and spelling errors in original quotation). Mills allegedly ignored Shaver's kite and told Shaver to "deal with it . . . this isn[']t a motel 6[,] and [Shaver does not] get to pick and choose where and who [he] live[s] with." *Id. See also* Docket 1-1 at 10. Shaver sent Unit Manager Nyreen a kite describing Mill's response and Shaver's ongoing safety concern from being housed with Burton. Docket 1 at 6. At the time Shaver sent the kite to Nyreen, Shaver had already pushed the emergency button once or twice and filled out a move request slip. *Id.* Nyreen denied Shaver's request to move because "he isn[']t doing moves any more [sic]." *Id.* Shaver also sent Bittinger a kite about the threats from Burton, the responses from Mills and Nyreen, his

mental health concerns, and his fear of future injury. *Id.* Shaver never received a response from Bittinger. *Id.*

On May 13, 2023, Burton assaulted Shaver with a padlock. *Id.* at 5–6; Docket 1-1 at 8. The assault occurred two-and-a-half weeks after Shaver notified prison staff of the threats from his cellmate. Docket 1 at 5; Docket 1-1 at 10. Burton broke Shaver's nose and shattered Shaver's cheek; Shaver required eleven stitches. Docket 1 at 5; Docket 1-1 at 8. Shaver suffered a concussion, and he "was on boost for about 3 month's [sic] to help heal [his] cheek bone[.]" Docket 1 at 7. Shaver claims that he was supposed to receive plastic surgery, but the request was denied because "medical staff keep telling [him that his] breathing problem from [his] nose is due to allergies and will not fix [his] nose." Docket 1-1 at 8. *See also* Docket 1 at 5.

Shaver reported to Officer Sorensen[2] that another inmate posed a safety threat to Shaver. Docket 1-1 at 10. Sorensen allegedly said that he would take care of it, but on September 26, 2023, Shaver was assaulted by the inmate he reported. *Id.*

### 2.    Employment

Shaver claims that he was denied prison employment by Mills. *Id.* at 4. Shaver alleges that Mills chose to assign jobs to his favorite inmates over other inmates. *Id.* Mills allegedly hired some inmates, who quit, were fired, were

---

[2] Shaver's filings allege that Sorensen violated his rights, but Shaver does not name Sorensen as a defendant in his complaint. *See* Docket 1 at 2–3.

written up, or left the prison and returned, before other inmates who had been waiting on the list longer. *Id.*

Shaver alleges that he was denied the jobs he applied for because he was having surgery soon. *Id.* Around October 13, 2023, Shaver was offered a job working in the kitchen, but Shaver did not accept the job because of his upcoming surgery. *Id.* Shaver then was moved to the bottom of the jobs waiting list. *Id.* Shaver claims that he tried to talk to Mills about his employment, but Mills allegedly said that part of his denial of employment was because of a writeup that Shaver received on June 12, 2023, which Shaver claims was dismissed. *Id.*

Shaver filed a grievance about Mills's hiring practices. *Id.* The Administrative Remedy Response informed Shaver that he was number eighty-six on the jobs waiting list because he "accept[ed] a job in the kitchen and refus[ed] to work the following day. Due to [him] quitting that job, [Shaver] w[as] appropriately moved to the bottom of the jobs waiting list." *Id.* at 5.

Shaver claims that even though he has grand mal seizures, shoulder dislocation, medical disabilities, and work disabilities, Mills would not give him accommodations. Docket 10 at 1. On February 24, 2024, Mills assigned Shaver to the kitchen dish pit. *Id.* Shaver claims that Mills used Shaver's disabilities against him and retaliated against him by assigning Shaver to the dish pit because Shaver has filed grievances. *Id.*

### 3.    Unprofessional Conduct By Prison Employees

Shaver filed a grievance about unprofessional conduct by Prison Guard Top, including that he taunted and argued with another inmate. *See* Docket 1-1 at 2. Shaver also claims that he has had problems with Prison Officers Boysen, Godbey, Pitschey, Decom, Top, and others because they hurt and threatened him.[3] *See id.* at 8–9. He specifically claims that he had his property stolen in front of Boysen, but Boysen rolled his eyes and asked, "Oh did you get assulted [sic] again or what are you complaining about now. Said he didn[']t [s]ee anything and walked away." *Id.* at 9.

### 4.    Access to the Courts

Shaver claims that he has had problems with legal mail not being mailed by Mills and other South Dakota Department of Corrections (DOC) staff. Docket 9 at 1; Docket 12-2 at 1. He also fears that his legal mail is being thrown away. Docket 9 at 1. On one occurrence, Shaver received legal mail that was eight days old. *Id.* at 2. On another occurrence, Shaver claims that he was not able to send mail to the court for a week. Docket 12-2 at 1. Shaver also claims that he filed grievances, but the grievances were denied regardless of the issue or policy violations alleged. Docket 9 at 1–2. Shaver filed a request to authorize legal typing assistance by a fellow inmate, but he did not receive a response. Docket 11 at 1. Shaver claims that there are only three law

---

[3] Shaver's filings allege that Boysen, Godbey, Pitschey, Decom, and Top violated his rights, but Shaver does not list Boysen, Godbey, Pitschey, Decom, and Top as named defendants in his complaint. *See* Docket 1 at 2–3.

computers available for 900 inmates to use at the SDSP, which limits Shaver to use the computers only five hours per week. Docket 12 ¶ 6.

Shaver also alleges that he experienced a delay in receiving his prisoner trust account reports because he did not have any money in his trust account to pay for the required copies. Docket 8 at 1. He claims that he had to keep requesting the documents because his requests were denied. Docket 9 at 1. He also claims that under DOC policy he should not have been charged the fee for the documents because they were legal mail. *Id.*

Shaver claims that the law library includes only a handful of books and does not include any self-help or legal reference books. Docket 12 ¶ 4; Docket 15-1 at 1. SDSP offers an electronic law library, but he is "illiterate and ignorant in [the electronic law library's] usage." Docket 12 ¶ 4; Docket 15-1 at 1. Shaver claims that there is not an inmate legal advisor, attorney, paralegal, or law clerk to help him with the filings at SDSP. Docket 12 ¶ 3; Docket 15-1 at 1. He alleges that the phone number for the Clerk of Court is restricted at the SDSP. Docket 11 at 1; Docket 13 at 1; Docket 14 at 1; Docket 15 at 1.

### 5.   **Interstate Compact**

Shaver claims that he has asked prison staff about his interstate compact status for the past two years. Docket 9 at 1; Docket 10 at 1. He has asked the case manager, unit coordinator, unit manager, and warden, but he was told that he would be notified when there was an update and that he can fill out an interstate compact form and submit a new form one year after the prior interstate compact form is denied. Docket 9 at 1; Docket 10 at 1. A new

unit manger told Shaver that he did not have an interstate compact form on file. Docket 9 at 1. Because of the alleged lies by staff about Shaver's interstate compact form, he wrote a grievance, which was denied. *Id.*; Docket 10 at 1. Shaver appealed the grievance to the Secretary of Corrections, who also denied his grievance. Docket 9 at 1; Docket 10 at 1.

### 6.    Retaliation

Shaver generally claims that he was retaliated against for writing grievances. Docket 9 at 2; Docket 10 at 1. Shaver has filed multiple grievances, which he claims are "always[]s wrote off as[] the guard didn[']t do anything unprofessional[.]" Docket 1-1 at 8. He claims that "[t]he more you ask for help and try to report what is going on the more they retaliate aginst [sic] you and egnor [sic] you." *Id.* Shaver claims that "[i]t's like [he is] getting into trouble because [he] took a stand and started reporting thing's [sic] and speaking up how many times [he has] been threatened by the guard's [sic] . . . " *Id.* Shaver also claims that, because he reported concerns, guards have made fun of him and tightened his handcuffs to the point that his hands turned blue and purple. *Id.* He claims that he has been placed in the Special Housing Unit "just cause" after he filed grievances. Docket 9 at 2.

### 7.    General Information

Shaver sues Mills and Nyreen in their individual and official capacities, and Shaver sues Bittinger in only her official capacity. Docket 1 at 2–3. The only relief that Shaver requests is $1,000,000 per stitch he received from being assaulted by Burton. *Id.* at 7.

### B.   Legal Background

The court must assume as true all facts well pleaded in the complaint. *Est. of Rosenberg v. Crandell*, 56 F.3d 35, 36 (8th Cir. 1995). Pro se and civil rights complaints must be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam) (citation omitted); *Bediako v. Stein Mart, Inc.*, 354 F.3d 835, 839 (8th Cir. 2004) (citation omitted). Even with this construction, "a *pro se* complaint must contain specific facts supporting its conclusions." *Martin v. Sargent*, 780 F.2d 1334, 1337 (8th Cir. 1985) (citation omitted); *see also Ellis v. City of Minneapolis*, 518 F. App'x 502, 504 (8th Cir. 2013) (per curiam) (citation omitted).

A complaint "does not need detailed factual allegations . . . [but] requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal citations omitted). If it does not contain these bare essentials, dismissal is appropriate. *See Beavers v. Lockhart*, 755 F.2d 657, 663–64 (8th Cir. 1985) (citation omitted) (explaining that a district court does not err when it dismisses a claim based on vague allegations or unsupported generalizations). *Twombly* requires that a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true[.]" 550 U.S. at 555 (internal citation and footnote omitted); *see also Abdullah v. Minnesota*, 261 F. App'x 926, 927 (8th Cir. 2008) (per curiam) (noting that a "complaint must contain either direct or inferential allegations respecting all material

10

elements necessary to sustain recovery under some viable legal theory" (citing *Twombly*, 550 U.S. at 554–63)).

Under 28 U.S.C. § 1915A, the court must screen prisoner complaints and dismiss them if they "(1) [are] frivolous, malicious, or fail[] to state a claim upon which relief may be granted; or (2) seek[] monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915A(b). The court will now screen Shaver's complaint under 28 U.S.C. § 1915A.

### C.    Legal Analysis

#### 1.    Official Capacity Claims for Money Damages

Shaver sues defendants in their official capacities requesting money damages. Docket 1. Defendants are employees of the State of South Dakota. *See id.* "[A] suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (citing *Brandon v. Holt*, 469 U.S. 464, 471 (1985)). Thus, it is a suit against the state itself. While "[§] 1983 provides a federal forum to remedy many deprivations of civil liberties, . . . it does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties." *Id.* at 66.

The Eleventh Amendment generally acts as a bar to suits against a state for money damages unless the state has waived its sovereign immunity. *Id.* The State of South Dakota has not waived its sovereign immunity. Thus, Shaver's claims for money damages against defendants in their official capacities are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

"Section 1983 plaintiffs may sue individual-capacity defendants only for money damages and official-capacity defendants only for injunctive relief." *Patterson v. Casalenda*, 2019 WL 2270609, at *6 (D. Minn. Apr. 23, 2019) (quoting *Brown v. Montoya*, 662 F.3d 1152, 1161 n.5 (10th Cir. 2011)) *R&R adopted by* 2019 WL 2267055 (D. Minn. May 28, 2019). *See also Will*, 491 U.S. at 71 n.10. Shaver does not request any injunctive relief in his complaint. *See generally* Docket 1. Shaver seeks monetary relief against defendants in their individual capacities on only his failure to protect claim. *See* Docket 1 at 7 (requesting $1,000,000 per stitch). Thus, all of Shaver's claims except for his failure to protect claim are dismissed without prejudice for failure to state a claim upon which relief may be granted under 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

### 2. Individual Capacity Claim for Money Damages Against Mills and Nyreen

"Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Thus, Shaver's individual capacity claims must allege that each individual defendant either

participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor.

Liberally construing Shaver's complaint, he alleges a claim for failure to protect in violation of his Eighth Amendment rights. Docket 1 at 6. "[P]rison officials have a duty . . . to protect prisoners from violence . . . ." *Farmer v. Brennan*, 511 U.S. 825, 833 (1994) (internal quotation omitted). "It is not, however, every injury suffered by one prisoner at the hands of another that translates into constitutional liability for prison officials responsible for the victim's safety." *Id.* at 834. In order to prevail on a failure to protect claim, a prisoner must demonstrate two things. First, he must show that he is incarcerated under conditions posing a substantial risk of serious harm. *Spruce v. Sargent*, 149 F.3d 783, 785 (8th Cir. 1998). Second, an inmate must demonstrate that prison officials were deliberately indifferent to that risk. *Id.* "Deliberate indifference requires a showing that the official knew the risk existed, but disregarded it." *Id.*

"The Eighth Amendment requires officials to 'provide humane conditions of confinement' by taking reasonable steps to protect inmates convicted of crimes from assault by other inmates." *Edwards v. Hubbard*, 2016 U.S. Dist. LEXIS 69710, at *2 (E.D. Mo. May 27, 2016) (citing *Farmer*, 511 U.S. at 832). But "threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Prater v. Dahm*, 89 F.3d 538, 541–42 (8th Cir. 1996). Shaver claims that he had previously pushed the emergency button on two or three prior

13

occasions because of Burton's yelling and threatening behavior toward him. Docket 1 at 5; Docket 1-1 at 8. Thus, for the purposes of screening, he has alleged sufficient facts to show that he was incarcerated in conditions posing a substantial risk of serious harm. Shaver claims that he sent kites to Mills, Nyreen, Bittinger, and other SDSP employees about Burton's threats and violent actions toward him, and he alleges that defendants did not take any action to protect him from Burton. Docket 1 at 6. He also claims that he was attacked by Burton because his requests to move were denied. *See id.* Thus, Shaver alleges sufficient facts for his failure to protect claim against Mills and Nyreen in their individual capacities for money damages to survive § 1915A screening.

### D.    Filing an Amended Complaint

Liberally construing Shaver's complaint, he alleges a First Amendment retaliation claim and a First Amendment right to send and receive mail claim against Mills, but Shaver does not request any damages under the First Amendment claims. *See generally* Dockets 1, 9, 10. To pursue a First Amendment claim, Shaver must request relief that this court can grant. Shaver has thirty days to file an amended complaint. Shaver must file his amended complaint on or before **June 30, 2024**.

If Shaver files an amended complaint, he should specifically:

(1) identify and name as a Defendant each individual who allegedly violated his constitutional rights; (2) explain how each individual personally violated his constitutional rights; (3) state in what capacity he is suing each Defendant (individual capacity, official capacity, or both); (4) identify his prisoner status at the time of the alleged unconstitutional conduct; (5) state the injury he suffered as

14

a result of each Defendant's alleged unconstitutional conduct; and (6) state what relief he seeks from the Court.

*Gray v. Does*, 2023 WL 7381414, at *2 (E.D. Ark. Oct. 30, 2023). "[A]n amended complaint supercedes [sic] an original complaint and renders the original complaint without legal effect." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 928 (8th Cir. 2005) (citing *In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir 2000)). Thus, all claims that Shaver seeks to bring against defendants must be included in an amended complaint.

Because Shaver has not requested any relief for violation of his First Amendment rights, the court need not analyze whether the original complaint alleges a First Amendment retaliation claim and a First Amendment right to send and receive mail claim. If Shaver files an amended complaint, the amended complaint must allege sufficient facts to show a claim upon which relief may be granted and must request relief that this court has authority to grant.

To allege a First Amendment retaliation claim, a plaintiff must "show (1) he engaged in a protected activity, (2) the government official took adverse action against him that would chill a person of ordinary firmness from continuing in the activity, and (3) the adverse action was motivated at least in part by the exercise of the protected activity." *Spencer v. Jackson County*, 738 F.3d 907, 911 (8th Cir. 2013) (quoting *Revels v. Vincenz*, 382 F.3d 870, 876 (8th Cir. 2004)). "[T]he plaintiff must show the official took the adverse action because the plaintiff engaged in the protected [activity]." *Revels*, 382 F.3d at

876. "The filing of a prison grievance, like the filing of an inmate lawsuit, is protected First Amendment activity." *Lewis v. Jacks*, 486 F.3d 1025, 1029 (8th Cir. 2007) (citing *Dixon v. Brown*, 38 F.3d 379, 379 (8th Cir. 1994)).

Inmates retain the First Amendment right to "send and receive mail." *Thongvanh v. Thalacker*, 17 F.3d 256, 258 (8th Cir. 1994) (citations omitted). "[A] prison inmate retains those First Amendment rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822 (1974). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The Eighth Circuit Court of Appeals has applied *Turner*'s four-factor test to prison regulations regarding mail:

> (1) whether there is a valid rational connection between the regulation and the legitimate government interest it purports to further; (2) whether the inmate has an alternative means of exercising his constitutional right; (3) the impact that accommodation of the inmate's right would have upon others, including inmates as well as non-inmates; and (4) the absence of a ready alternative to the regulation.

*Thongvanh*, 17 F.3d at 259. This standard applies to both incoming and outgoing mail. *Id.* (citation omitted).

## III.   Motions to Appoint Counsel

Shaver filed two motions to appoint counsel. Dockets 12, 15-1. "A pro se litigant has no statutory or constitutional right to have counsel appointed in a civil case." *Stevens v. Redwing*, 146 F.3d 538, 546 (8th Cir. 1998). The court

"may request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1). When determining whether to appoint counsel to a pro se litigant, the court considers the "factual complexity of the case, the ability of the indigent to investigate the facts, the existence of conflicting testimony, the ability of the indigent to present his claim and the complexity of the legal issues." *Abdullah v. Gunter*, 949 F.2d 1032, 1035 (8th Cir. 1991) (citation omitted). Shaver's claims do not appear to be factually or legally complex, and his filings clearly set forth his claims. Shaver claims that counsel is necessary because he has a limited IQ of around 55. Docket 12 ¶ 10. *See also* Docket 12-1 at 4–5. "Although [a plaintiff's] mental condition is a factor that may weigh in his favor, it does not of itself require that counsel be appointed." *Edgington v. Mo. Dep't of Corr.*, 52 F.3d 777, 780 (8th Cir. 1995) (citing *Phelps v. U.S. Fed. Gov't*, 15 F.3d 735, 737 (8th Cir. 1994)), abrogated on other grounds by *Doe v. Cassel*, 403 F.3d 986 (8th Cir. 2005). Because this court believes that Shaver can adequately present his claims at this time, his motions for appointment of counsel, Dockets 12 and 15-1, are denied.

Thus, it is ORDERED:

1. That Shaver's first motion for leave to proceed in forma pauperis, Docket 4, is granted.

2. That Shaver's second motion for leave to proceed in forma pauperis, Docket 6, is denied as moot.

3. That the Clerk of Court will send a copy of this order to the appropriate financial official at Shaver's institution.

4.    That the institution having custody of Shaver is directed that whenever the amount in Shaver's trust account, exclusive of funds available to him in his frozen account, exceeds $10.00, monthly payments that equal 20 percent of the funds credited the preceding month to Shaver's trust account shall be forwarded to the U.S. District Court Clerk's Office under 28 U.S.C. § 1915(b)(1), until the $350 filing fee is paid.

5.    That Shaver's claims for money damages against defendants in their official capacities are dismissed with prejudice under 28 U.S.C. §§ 1915(e)(2)(B)(iii) and 1915A(b)(2).

6.    That Shaver's failure to protect claim against Mills and Nyreen in their individual capacities for money damages survives § 1915A screening.

7.    That Shaver has until **June 30, 2024**, to file an amended complaint.

8.    That Shaver's motions to appoint counsel, Dockets 12 and 15-1, are denied.

9.    That Shaver's motion for response, Docket 15, is denied as moot.

10.   That the Clerk of Court shall send blank summons forms and Marshall Service Forms (Form USM-285) to Shaver so that he may cause the complaint to be served upon defendants Mills and Nyreen.

11.   That Shaver shall complete and send the Clerk of Court a separate summons and USM-285 form for defendants Mills and Nyreen.

Failure to do so will result in dismissal of Shaver's complaint without prejudice for failure to prosecute.

12.    That the United States Marshal Service shall serve the completed summons, together with a copy of the complaint (Docket 1) and this order, upon defendants Mills and Nyreen.

13.    That defendants Mills and Nyreen will serve and file an answer or responsive pleading to the complaint on or before 21 days following the date of service or 60 days if the defendants fall under Fed. R. Civ. P. 12(a)(2) or (3).

14.    That Shaver will keep the court informed of his current address at all times. All parties are bound by the Federal Rules of Civil Procedure and by the court's Local Rules while this case is pending.

Dated May 30, 2024.

BY THE COURT:

/s/ *Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE