UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH DAKOTA
SOUTHERN DIVISION

| | |
|---|---|
| GARY MATTHEW SHAVER,<br><br>Plaintiff,<br><br>vs.<br><br>JASON MILLS, Unit Coordinator at South Dakota State Penitentiary in his individual and official capacities; NICHOLAS NYREEN, Unit Manager at South Dakota State Penitentiary in his individual and official capacities; TERESA BITTINGER, in her individual capacity; KELLIE WASKO, in her individual capacity; NICK LAMB, Secretary of Corrections in his official capacity; BRENT FLUKE, Deputy Secretary of Corrections in his individual and official capacities; RICK JOHNSTON, Associate Warden in his individual and official capacities; and UNKNOWN DEPARTMENT OF CORRECTIONS EMPLOYEES,<br><br>Defendants. | 4:23-CV-04204-KES<br><br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS, AND DENYING PLAINTIFF'S MOTION TO DISMISS WITHOUT PREJUDICE |

Pro se plaintiff, Gary Shaver, filed a verified civil rights complaint under 42 U.S.C. § 1983 alleging various state and constitutional law violations against Defendants Mills, Nyreen, and Bittinger. *See* Docket 1. After screening Shaver's complaint under 28 U.S.C. § 1915A, the court dismissed all of his claims except the failure-to-protect claim against Nyreen and Mills. *See* Docket 16 at 14, 17-19. Shaver then filed a verified amended complaint, re-adding Bittinger and naming three additional defendants: South Dakota Secretary of

Corrections Kellie Wasko, Deputy Secretary of Corrections Brent Fluke, and

South Dakota State Penitentiary Associate Warden Rick Johnston. *See* Docket

27 at 2-3.

Defendants Mills, Nyreen, Bittinger, Wasko, Lamb, Fluke, and Johnston

now move for summary judgment on Shaver's surviving claims. Docket 62 at 1.

Additionally, Shaver filed a motion for judgment on the pleadings. Docket 79.

And Shaver filed a motion to dismiss without prejudice all claims relating to

incidents involving Standing Soldier, Kayan, and Donovan; all claims against

Wasko and Bittinger as moot; and all claims against Fluke, Johnston, and

unknown Department of Corrections employees. Docket 81. The court issues

the following order.

## FACTUAL BACKGROUND

Viewing the record in the light most favorable to Shaver, the court recites

the following factual background:[1]

---

[1] Because Shaver did not respond to defendants' statement of material facts as
required by District of South Dakota Civil Local Rule of Practice 56.1(B), all the
statements in defendants' statement of material facts are deemed admitted
under District of South Dakota Civil Local Rule of Practice 56.1(D). But
contrary to defendants' contentions, *see* Docket 74 at 3-4, the court will
consider the facts set forth in Shaver's verified amended complaint when
considering whether there is a genuine issue of material fact. A verified
complaint is the equivalent of an affidavit for summary judgment purposes.
*See, e.g., Roberson v. Hayti Police Dep't.*, 241 F.3d 992, 994-95 (8th Cir. 2001).
As the *Roberson* court stated, "[a]lthough a party may not generally rest on his
pleadings to create a fact issue sufficient to survive summary judgment, the
facts alleged in a verified complaint need not be repeated in a responsive
affidavit in order to survive a summary judgment motion." *Id.* at 995 (citation
omitted). Although the court is not required to "plumb through the record in
order to find a genuine issue of material fact[,]" *Barge v. Anheuser-Busch, Inc.*,
87 F.3d 256, 260 (8th Cir. 1996), the court will consider any specific, non-
conclusory facts alleged in Shaver's verified amended complaint. The court will

This case arises from a series of incidents between Shaver and his cellmate, Terrance Burton, at the South Dakota State Penitentiary, culminating in a May 13, 2023, assault in which Burton struck Shaver in the face with a padlock, causing Shaver to suffer a broken nose, a shattered cheekbone, a concussion, and emotional injuries. Docket 27 ¶¶ 24-30. Shaver alleges that defendants failed to take sufficient action to prevent the altercation, despite being notified on multiple occasions of the ongoing conflict between the cellmates. *See id.* ¶ 27-29.

During the relevant time period, Shaver was an inmate at the South Dakota State Penitentiary in Sioux Falls, South Dakota. *See* Docket 64 ¶¶ 1-2. In December 2022, Shaver was reassigned to West Hall, a general population unit housing inmates with good behavior and special needs. Docket 27 ¶ 15. Unit Manager Nyreen and Unit Coordinator Mills worked in West Hall during this time. *See id.* ¶ 18.

Shortly after arriving in West Hall, Shaver repeatedly attempted to notify Warden Bittinger of alleged misconduct and policy violations by Nyreen and Mills. *Id.* ¶ 20. He submitted multiple kites reporting that staff were not following policies, were acting arbitrarily, and were making their own rules, but

---

set forth the facts as alleged in the verified amended complaint and any portions of the defendants' statement of material facts that do not conflict with the verified amended complaint. *See Shannon v. Koehler*, 616 F.3d 855, 864 n.5 (8th Cir. 2010) ("When qualified immunity is raised at the summary judgment stage, the proper course is to view the facts and draw reasonable inferences in the light most favorable to the plaintiff—which usually means adopting . . . the plaintiff's version of the facts—and then to assess the constitutionality of the challenged conduct." (citation omitted)).

many of these kites were intercepted or returned, often signed by Mills or Nyreen. *Id.* At some point between March and June 2023, Shaver also mailed a letter through the U.S. Postal Service directly to Warden Bittinger describing the ongoing issues. *Id.* ¶ 18. Despite these efforts, Nyreen and Mills continued their unprofessional conduct. *Id.* ¶¶ 18, 20.

In April 2023, Shaver was assigned a new cellmate, Terrance Burton. *Id.* ¶ 24. Both were classified at the "High Medium" custody level. Docket 64 ¶ 4. Shortly after the assignment, tensions between them escalated, as Burton accused Shaver of moving items in his locker, opening the cell door, and acting angrily whenever Shaver spoke with other inmates who visited at the cell door. Docket 27 ¶ 24. Burton also became verbally threatening and racially abusive towards Shaver. *See id.*

Shaver subsequently sent kites to Nyreen, Mills, and mental health personnel. *Id.* ¶ 25. Shaver explained that Burton was an "aggressive, dominating person," but was told by Mills that the Penitentiary was not a "[M]otel 6" and that he did not "get to pick and choose" his cellmates. *Id.* Shaver also sent a kite to Warden Bittinger, explaining that he "felt threatened[,]" was afraid of being assaulted, and informed her that neither Nyreen nor Mills were "helping[.]" *Id.* Both the guards and the inmates in his cell block were aware of Shaver's safety concerns regarding Burton. *Id.*

By early May 2023, Shaver's interactions with Burton intensified. *Id.* ¶ 26. During one incident, Burton stood in Shaver's face and yelled, prompting Shaver to press the emergency button; an officer responded, but Burton told

prison guards that the matter was simply a misunderstanding. *Id.* Shaver repeatedly sought help, submitting multiple kites to Nyreen, Mills, Warden Bittinger, and mental health personnel. *See id.* ¶ 27. Shaver tried to talk with Nyreen about his request to move to a different cell but was told "to deal with it." *Id.* In his kite to Warden Bittinger, Shaver reiterated his concern that Burton was "dominating" and "aggressive[,]" noting that it was approximately his eighth kite to her. *Id.* Shaver also requested a cell reassignment through a formal move slip, but the request was denied. *Id.*

Approximately two days after Shaver hit the emergency button, tensions between Shaver and Burton escalated into a physical confrontation, prompting further requests for staff intervention. *Id.* ¶¶ 28-29. When Burton became verbally threatening, shouted racial insults, and advanced toward Shaver—pushing him against the wall and briefly placing a hand on his throat—Shaver again pressed the emergency button. *Id.* ¶ 28. A prison guard responded, and the confrontation de-escalated. *Id.* The officer told Shaver that "they all know" about the situation with Burton but "that nothing can be done[.]" *Id.*

That night, Shaver filled out another move slip and sent kites to Nyreen, Mills, Warden Bittinger, and mental health personnel. *Id.* ¶ 29. In his kite to Nyreen, Shaver said that he "felt like his life was in danger and that nothing is being done," and he pleaded with Nyreen to "help before something serious happens." *Id.*; *see* Docket 64 ¶¶ 33-35 (Shaver explaining the ongoing conflict and requesting assistance "before something goes wrong and [Burton] freaks out and takes all his frustration and paranoia out on [Shaver] or try's [sic]

5

something else." (second and third alterations in original)). Shaver's kite to Mills included details about the physical altercation during which Burton placed his hand around Shaver's neck. Docket 27 ¶ 29. In his kite to Warden Bittinger, Shaver further asserted that Burton was "threatening" and "bullying" him and that Nyreen and Mills failed to address the situation. *Id.* Shaver submitted all these kites the next morning. *Id.*

On Saturday May 13, 2023, the escalating tensions culminated in an assault in which Burton struck Shaver in the face with a padlock, causing a broken nose, a shattered cheekbone, a concussion, and emotional injuries. *Id.* ¶ 30. Following the assault, Shaver met with mental health personnel, including Behavioral Health Supervisor Hill, to discuss the incident. Docket 64 ¶¶ 28-37. Hill documented receipt of two kites on May 15, 2023, including the May 12, 2023, kite, which were scanned into Shaver's medical records. *Id.* ¶¶ 36-38.

Nyreen held the Unit Manager position at the South Dakota DOC for approximately thirteen years, where he was responsible for investigating inmate grievances and determining housing assignments. Docket 64 ¶¶ 6-7. Nyreen was Mills's direct supervisor. *Id.* ¶ 22. Nyreen stated that DOC practice required staff to privately interview any inmate who raised concerns about threats from a cellmate. *Id.* ¶ 8. If the concern involved potential threats to physical safety, the inmate could be offered protective custody, which involves removal from the current housing assignment pending further review. *Id.* ¶¶ 9-10. Any inmate could request protective custody at any time, and during his

6

tenure, Nyreen routinely met with inmates expressing safety concerns, offering protective custody "in all scenarios." *Id.* ¶¶ 12-14. If an inmate declined, a refusal form would be signed and uploaded into the Comprehensive Offender Management System (COMS). *Id.* ¶¶ 15-16. Nyreen does not recall meeting with Shaver or receiving any report of concerns about Burton prior to May 13, 2023. *Id.* ¶¶ 17-19.

Mills served as the Unit Coordinator for West Hall during the relevant time period. *Id.* ¶ 20. Mills's duties included handling legal mail, investigating grievances, and performing administrative and security functions. *Id.* ¶ 21. Like Nyreen, Mills does not specifically recall receiving a kite or being informed of any safety concerns regarding Burton prior to May 13, 2023. *Id.* ¶¶ 23, 26-27. He stated that if he had received a report of potential threats, he would have promptly notified Nyreen and, if the situation appeared emergent, offered protective custody. *Id.* ¶¶ 24-25.

## PROCEDURAL BACKGROUND

In December 2023, Shaver filed a verified civil rights complaint alleging various violations of state and constitutional law against Mills, Nyreen, and Bittinger. *See* Docket 1. The court screened Shaver's complaint pursuant to 28 U.S.C. § 1915A. *See* Docket 16. The court construed Shaver's complaint to assert a failure-to-protect claim under the Eighth Amendment, as well as other claims under the First Amendment. *Id.* at 12-16. The resulting screening order dismissed all of Shaver's claims except for his failure-to-protect claim against Nyreen and Mills. *Id.* at 14, 18. Because he did not request any damages under

his First Amendment claims, the court permitted Shaver to file an amended complaint to specify the appropriate relief. *Id.* at 14.

On July 22, 2024, Shaver filed a verified amended complaint. *See* Docket 27. In the amended complaint, he re-added Bittinger and named three additional defendants: South Dakota Secretary of Corrections Wasko, Deputy Secretary of Corrections Fluke, and South Dakota State Penitentiary Associate Warden Johnston. *Id.* at 2. Shaver is suing Fluke, Johnston, and Wasko in both their individual and official capacities. *Id.* But Wasko is no longer the Secretary of Corrections. Thus, the current Secretary, Nick Lamb, is substituted for Wasko on the official capacity claim pursuant to Federal Rule of Civil Procedure 25(d). Shaver therefore brings claims against Lamb in his official capacity as South Dakota Secretary of Corrections and Wasko in her individual capacities. While Shaver's amended complaint includes additional factual details that support his failure-to-protect claim, he did not assert any new claims. *See* Docket 27; Docket 60 at 2.

Shaver seeks monetary relief from each defendant in their individual capacities. Docket 27 ¶¶ 33-39. He also requests injunctive relief against Mills, Nyreen, Fluke, and Johnston, asking the court to order each defendant "to take training to deal with disabled individuals, and then provide the court with proof that training has occurred." *Id.* ¶¶ 35-36, 38-39. Shaver also requests the court order Lamb to provide "a safe environment for plaintiff, given his mental disabilities." *Id.* ¶ 34. In their answer, the defendants deny all liability for the

failure-to-protect claim and assert multiple defenses, including qualified immunity. *See* Docket 35 ¶¶ 14-23; Docket 36 ¶¶ 18-27.

On May 15, 2025, the court entered an order denying all of Shaver's pending motions. Docket 60 at 19-20. This court also reiterated that only his failure-to-protect claims against Nyreen and Mills survived screening. *Id.* at 1-2. The court held that Shaver's claims for injunctive relief against Bittinger in her official capacity are moot because Shaver is no longer incarcerated at the Penitentiary. *Id.* at 2 n.1. Finally, the court ruled that additional injunctive relief could not be granted based on Shaver's alleged First Amendment claim because he had not sufficiently pleaded claims under those laws. *Id.* at 5. At this stage, only Shaver's failure-to-protect claim arising from Burton's assault on May 13, 2023, remains.

Defendants move for summary judgment on Shaver's failure-to-protect claim. Docket 62; *see* Docket 63. Defendants assert that qualified immunity shields them from Shaver's individual-capacity claims as a matter of law. *See* Docket 63 at 8-16. Additionally, defendants contend that summary judgment should be granted on Shaver's individual-capacity claims pertaining to Wasko, Johnston, and Fluke because the amended complaint does not allege any facts against them. *Id.* at 16-17. Finally, defendants argue that summary judgment is warranted on Shaver's claims against Mills, Nyreen, Fluke, and Johnston. *Id.* at 17-18. Shaver opposes defendants' motion, Docket 72, and defendants filed a reply brief, Docket 74.

After defendants filed their motion for summary judgment, Shaver filed a motion to voluntarily dismiss without prejudice all claims except the failure-to-protect claims against Nyreen and Mills. Docket 81 at 3-6. Defendants oppose the motion to dismiss without prejudice. Docket 82. The court addresses each argument in turn.

## LEGAL STANDARDS

### I.    Summary Judgment

The court shall grant a summary judgment motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A summary judgment motion must be supported by evidence on the record, which may include affidavits or declarations based upon personal knowledge. Fed. R. Civ. P. 56(c). "A plaintiff's verified complaint is the equivalent of an affidavit for purposes of summary judgment . . . [and] the facts alleged in a verified complaint need not be repeated in a responsive affidavit in order to survive a summary judgment motion." *Roberson*, 241 F.3d at 994-95.

"The non-moving party receives the benefit of all reasonable inferences supported by the evidence, but has 'the obligation to come forward with specific facts showing that there is a genuine issue for trial.' " *Atkinson v. City of Mountain View*, 709 F.3d 1201, 1207 (8th Cir. 2013) (quoting *Dahl v. Rice Cnty.*, 621 F.3d 740, 743 (8th Cir. 2010)). Said differently, a non-moving party must present "sufficient probative evidence" capable of supporting a finding in its favor, not "mere speculation, conjecture, or fantasy." *Gregory v. City of*

10

*Rogers*, 974 F.2d 1006, 1010 (8th Cir. 1992) (en banc) (quoting *Barnes v. Arden Mayfair, Inc.*, 759 F.2d 676, 681 (9th Cir. 1985)).

The underlying substantive law determines the facts that are material for purposes of summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Id.* at 247-48. The availability of summary judgment essentially turns on whether a proper jury question is presented: "The inquiry performed is the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* at 250.

## II.    42 U.S.C. § 1983 and Qualified Immunity

Section 1983 imposes civil liability on persons who, acting under color of state law, deprive others of federally protected rights. 42 U.S.C. § 1983. But "[q]ualified immunity shields [government] officers from liability for civil damages when their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Westwater v. Church*, 60 F.4th 1124, 1128 (8th Cir. 2023) (quotation omitted). To survive summary judgment on his § 1983 claim, Shaver "must proffer facts showing that (1) a statutory or constitutional right was violated; and (2) the right was 'clearly established.' " *Id.* (quoting *Hansen v. Black*, 872 F.3d 554,

557-58 (8th Cir. 2017)). The court may consider these steps in any order, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), but "[u]nless the answer to both of these questions is yes, the defendants are entitled to qualified immunity," *Krout v. Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009).

## DISCUSSION

### I.    Plaintiff's Motion for Voluntary Dismissal Without Prejudice

After defendants filed their motion for summary judgment, Shaver filed a motion to voluntarily dismiss without prejudice all claims except the failure-to-protect claims against Nyreen and Mills. *See* Docket 81 at 6. Defendants oppose the motion to dismiss without prejudice. *See* Docket 82.

Under Federal Rule of Civil Procedure 41(a)(1), a plaintiff may voluntarily dismiss claims without a court order by filing "(i) a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment; or (ii) a stipulation of dismissal signed by all parties who have appeared." Fed. R. Civ. P. 41(a)(1)(A)(i)-(ii). Here, Shaver filed his motion for voluntary dismissal over seven months after defendants filed their motion for summary judgment. *Compare* Docket 81 (Shaver's motion to voluntarily dismiss), *with* Docket 62 (defendants' motion for summary judgment). Additionally, the parties who have appeared have not signed a stipulation of dismissal. *See* Docket 82. Thus, under Rule 41(a)(1)(A)(i) and (ii), Shaver's motion to voluntarily dismiss is denied.

Under Rule 41(a)(2), an action may be dismissed at the plaintiff's request after the opposing party answers or files a summary judgment motion "only by

court order, on terms the court considers proper." Fed. R. Civ. P. 41(a)(2); *see Morrow v. United States*, 47 F.4th 700, 704 (8th Cir. 2022). When deciding whether to allow voluntary dismissal, the court should consider "whether the party has presented a proper explanation for its desire to dismiss; whether a dismissal would result in a waste of judicial time and effort; and whether a dismissal will prejudice the defendant." *Hamm v. Rhone-Poulenc Rorer Pharms., Inc.*, 187 F.3d 941, 950 (8th Cir. 1999) (cleaned up).

In his motion, Shaver does not provide any explanation for his desire to dismiss. *See* Docket 81 at 6. And considering the court's opinion and order set forth below, dismissal at this stage would result in a waste of judicial time and effort. As such, under Rule 41(a)(2), the court denies Shaver's motion to voluntarily dismiss.

## II.    Defendants' Motion for Summary Judgment

### A.    Defendants in their Individual Capacities

Shaver brings an Eighth Amendment failure-to-protect claim against Mills, Nyreen, Wasko, Johnston, and Fluke, and a failure to supervise claim against Bittinger—all in their individual capacities. *See* Docket 27. Shaver contends that defendants failed to take sufficient action to prevent Burton's assault, despite being notified on multiple occasions of the ongoing conflict between the cellmates. *See id.* ¶¶ 27-29.

It is well established that the Eighth Amendment prohibition on cruel and unusual punishment imposes a duty on prison employees, who "are under an obligation to take reasonable measures to guarantee the safety of the

13

inmates themselves." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984); *see Farmer v. Brennan*, 511 U.S. 825, 832 (1994) ("[T]he treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." (internal quotation marks omitted)). Prison officials are obligated to provide humane conditions of confinement, including protecting inmates from violence. *See Jensen v. Clarke*, 94 F.3d 1191, 1197 (8th Cir. 1996). "Being violently assaulted in prison is simply not part of the penalty that criminal offenders pay for their offenses against society." *Farmer*, 511 U.S. at 834 (quotation omitted). For decades, prison officials have been aware of their duty "to protect prisoners from violence at the hands of other prisoners." *Id.* at 832-33 (citation omitted). Thus, a prison official's duty to protect inmates from unnecessary and wanton inflictions of pain has been "sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). Because it was clearly established at the time Shaver was assaulted that prison officials have a duty under the Eighth Amendment to protect inmates from violence by other prisoners, the court's analysis below focuses on the first prong of the qualified immunity analysis: whether that duty was violated. *See Pearson*, 555 U.S. at 236.

To prevail on an Eighth Amendment claim for failure to protect, a plaintiff must show that prison officials were "deliberately indifferent to the need to protect an inmate from a substantial risk of serious harm from other inmates." *Vandevender v. Sass*, 970 F.3d 972, 975 (8th Cir. 2020) (quoting

14

*Jackson v. Everett*, 140 F.3d 1149, 1151 (8th Cir. 1998)). This claim has two components: (1) an objective component, which asks whether the inmate faced a substantial risk of serious harm, and (2) a subjective component, which asks whether the prison official was deliberately indifferent to that risk—that is, the prison officials subjectively knew of and disregarded that safety risk. *Id.*

First, the conditions preceding the prison official's failure to protect the inmate must pose a substantial risk of serious harm to the inmates. *See Farmer*, 511 U.S. at 834. A risk is substantial when, "because of the violent nature of inmate assaults, the substantial risk of serious harm [is] obvious" and not merely the result of a sudden, unforeseeable attack on the victim. *Vandevender*, 970 F.3d at 976. The Eighth Circuit has held that a plaintiff may be exposed to a substantial risk of serious harm when an inmate previously threatened or assaulted the victim, or when known prior threats required greater protective measures. *See id.* (collecting cases). "This objective requirement ensures that the deprivation is sufficiently serious to amount to a deprivation of constitutional dimension." *Jensen*, 94 F.3d at 1197. An obvious risk of harm supports an inference that a prison official subjectively disregarded a substantial risk of serious harm to the inmate. *See Farmer*, 511 U.S. at 842 ("[A] factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious.").

Second, the prison official must have demonstrated a sufficiently culpable state of mind—that is, the official must have been deliberately indifferent to a substantial risk of serious harm to the inmate. *See id.* at 834.

15

For liability to attach, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *See Vandevender*, 970 F.3d at 975 (internal quotation marks omitted). This requisite state of mind is akin to recklessness, that is "more blameworthy than negligence," but less blameworthy than intentionally causing or knowingly creating a substantial risk of serious harm to the inmate. *See Farmer*, 511 U.S. at 835, 839-40.

### 1. Defendants Wasko, Johnston, and Fluke

As a preliminary matter, the court first addresses Shaver's claim against Wasko, Johnson, and Fluke in their individual capacities. "Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009).

> Thus, each Government official . . . is only liable for his or her own misconduct. As we have held, a supervising officer can be liable for an inferior officer's constitutional violation only if he directly participated in the constitutional violation, or if his failure to train or supervise the offending actor caused the deprivation.

*Parrish v. Ball*, 594 F.3d 993, 1001 (8th Cir. 2010) (cleaned up). Thus, Shaver's individual capacity claims must allege that each individual defendant either participated in the unconstitutional conduct or caused the conduct to occur through a failure to train or supervise the offending actor. Shaver did not respond to defendants' motion for summary judgment with regard to Wasko, Johnston, and Fluke, and did not

16

include any facts in the verified amended complaint describing their personal involvement. *See* Docket 72.

Viewing the facts in the light most favorable to Shaver, the record does not contain evidence to show that Wasko, Johnston, or Fluke directly participated in the events underlying Shaver's failure-to-protect claim. As such, summary judgment is granted on Shaver's individual capacity claims as they relate to Wasko, Johnston, and Fluke.[2]

### 2. Defendants Nyreen and Mills

Viewing the evidence and all reasonable inferences in the light most favorable to Shaver, a genuine issue of material fact exists regarding whether Shaver faced a substantial risk of serious harm and whether both Nyreen and Mills were deliberately indifferent to such risk. A reasonable jury could conclude that Shaver was exposed to a substantial risk of serious harm due to Burton's prior threats and assault. Based on this record, a reasonable jury could also find that Nyreen and Mills were on notice of those threats and the assault, and did little, if anything, to protect Shaver from such harm.

It is undisputed that Nyreen was the Unit Manager and Mills was the Unit Coordinator during the relevant time period. *See* Docket 27 ¶ 18; Docket 64 ¶¶ 6, 20. Before Burton assaulted Shaver with a padlock, Shaver states in his verified amended complaint that he sent multiple kites to Nyreen and Mills detailing the escalating tensions between them. *See* Docket 27 ¶¶ 25, 28-29.

---

[2] Wasko, Johnston, and Fluke were all added as defendants in Shaver's amended complaint, which was filed after the court screened Shaver's initial complaint under 28 U.S.C. § 1915A.

Shaver explained that Burton was an "aggressive, dominating person," but was told by Mills that the Penitentiary was not a "[M]otel 6" and that he did not "get to pick and choose" his cellmates. *Id.* ¶ 25. Shaver also reported that he had pressed the emergency button at least twice before the assault in response to Burton's behavior. *Id.* ¶¶ 28-29. After the physical altercation in which Burton placed his hands on Shaver's throat, Shaver informed both Nyreen and Mills that he needed help because he "felt like his life was in danger" and nothing was being done. *Id.* ¶ 29; *see also* Docket 64 ¶¶ 33-35 (explaining the ongoing conflict and requesting assistance "before something goes wrong and [Burton] freaks out and takes all his frustration and paranoia out on [Shaver] or try's [sic] something else"). Although defendants assert that there is "no record evidence that Burton was known to be a volatile, dangerous man," Docket 63 at 10, 12-13, such a statement is contradicted by the allegations in Shaver's verified amended complaint as described above, which is considered record evidence for purposes of summary judgment, *see Roberson*, 241 F.3d at 995.

Defendants argue that this case is similar to *Jones v. Wallace*, 641 F. App'x 665, 666 (8th Cir. 2016) (per curiam), where the Eighth Circuit affirmed summary judgment because the plaintiff's kites expressed only a generalized fear for his safety. Docket 63 at 12-13. Defendants maintain that Shaver's kites reflected frequent arguments with Burton and did not convey a "specific concern of a substantial risk of serious harm of which Nyreen or Mills were aware." *Id.* at 12. *Jones* is distinguishable, however, because the court there found "no evidence that [plaintiff] ever communicated to [defendants] a more

18

specific threat or danger." *Jones*, F. App'x at 666. Here, by contrast, Shaver has presented record evidence in his verified amended complaint that he specifically informed Nyreen and Mills not only of Burton's "aggressive" and "dominating" behavior, but also that he repeatedly pressed the emergency button out of fear for his safety, including during an incident in which Burton placed his hand around Shaver's neck. Docket 27 ¶ 29.

A genuine issue of material fact also exists concerning whether Nyreen and Mills were deliberately indifferent to such a substantial risk of serious harm to Shaver. As noted above, Shaver states in the verified amended complaint that both Nyreen and Mills were aware of Burton's repeated threats toward Shaver, Burton's prior assault on Shaver, the kites Shaver submitted requesting protection, and Shaver's use of the emergency button to report imminent danger arising from Burton's threats, and yet they took no meaningful action to protect him. *See id.* ¶¶ 20-30. Shaver asserts that after pressing the emergency button because Burton placed his hand around Shaver's neck, he sent Nyreen and Mills a kite documenting the altercation. *Id.* ¶ 29. Despite this, Shaver alleges that he was "not called down to either one of their offices." *Id.* A reasonable jury could infer from these facts that Nyreen and Mills knew of this substantial risk and deliberately chose to ignore it.

Defendants again argue that Shaver's allegations in his amended complaint are "self-serving" and unsupported by the record. Docket 63 at 14; *see also* Docket 74 at 4-5. They point to Nyreen's and Mills's affidavits that state they do not recall "meeting with Shaver to discuss concerns Shaver had

19

with Burton prior to the May 13" assault. *Id.* Defendants also assert that the kites currently in the record "were all authored after the May 13" assault.[3] *Id.* at 15 (emphasis removed). Based on this, defendants contend that, "[b]eyond his self-serving allegations, Shaver has failed to present sufficient evidence to establish that any of the Defendants had a sufficiently culpable state of mind prior to May 13 to impose liability on them for" Burton's assault. *Id.* at 16.

Defendants' arguments are misplaced. The record contains specific evidence supporting Shaver's claims beyond mere "self-serving" allegations. Again, Shaver's allegations in his verified amended complaint constitute valid evidence at the summary judgment stage. *See Roberson*, 241 F.3d at 995. Shaver states that he submitted multiple kites to Nyreen and Mills before the May 13, 2023, assault, explicitly reporting Burton's "aggressive" and "dominating" behavior and requesting help with the situation. *See* Docket 27 ¶¶ 25, 28-29. Shaver also pressed the emergency button on at least two occasions when he feared for his safety, including during a confrontation where Burton placed his hand around Shaver's neck. *Id.* ¶¶ 28-29. Thus, the record contains a sufficient factual basis from which a reasonable jury could conclude

---

[3] Defendants point to the kites in the record and argue that none of the approximately 50 kites submitted by Shaver mention Burton. Docket 63 at 13. That showing, however, is not sufficient to refute the allegations in Shaver's verified amended complaint that he sent kites to Nyreen and Mills describing escalating tensions between himself and Burton prior to the May 13, 2023, assault. It is unclear from the record whether Shaver has submitted to the court or obtained copies from defendants of all the kites he filed with DOC. Thus, the record does not foreclose the possibility that additional kites— outside Shaver's possession and not included in the record—exist and address his concerns about Burton.

that Nyreen and Mills were aware of a substantial risk of harm to Shaver and deliberately disregarded it. The affidavits offered by Nyreen and Mills, asserting lack of recollection, do not nullify the documentary evidence and instead present credibility questions for the jury. *See Arnett v. Norris*, 160 F.4th 921, 926 (8th Cir. 2025) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." (internal quotation omitted)). Similarly, the timing of the kites in the record does not negate Shaver's other pre-assault reports, which are sufficient to create a genuine issue of material fact regarding Nyreen and Mills's knowledge and deliberate indifference.

For these reasons, the court denies defendants' motion for summary judgment with regard to Shaver's failure-to-protect claim against Nyreen and Mills in their individual capacities for money damages. *See Arnett v. Norris*, 2024 WL 4372155, at *30-31 (E.D. Ark. Sept. 30, 2024), *aff'd*, 160 F.4th 921 (8th Cir. 2025).

### 3.    Defendant Bittinger

The law is clear that § 1983 does not permit liability based on respondeat superior. *See, e.g., Keeper v. King*, 130 F.3d 1309, 1314 (8th Cir. 1997). But a supervising officer may be liable for a subordinate's constitutional violation if the supervisor directly participated in the violation or if the failure to train or supervise caused the deprivation. *Parrish*, 594 F.3d at 1001. Thus, to impose individual liability, a plaintiff must show "that each Government-official

21

defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 663.

To assert a constitutional violation based on a defendant's failure to supervise staff, where the supervisor did not directly participate in the alleged unconstitutional conduct, a plaintiff must show that the supervisor: "(1) had notice of a pattern of conduct by the subordinate that violated a clearly established constitutional right; (2) was deliberately indifferent to or authorized such violations; (3) failed to take remedial action; and (4) that failure caused the inmate's injury." *Arnett*, 160 F.4th at 929. "The supervisors must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Id.* (internal quotation marks omitted). "To impose supervisory liability, other misconduct must be very similar to the conduct giving rise to liability." *S.M. v. Krigbaum*, 808 F.3d 335, 340 (8th Cir. 2015) (internal quotation marks omitted).

Construing the record most favorably to Shaver, there is no dispute that Bittinger had supervisory authority over Nyreen and Mills and the ability to intervene or implement corrective measures.[4] There is a genuine issue of material fact as to whether Bittinger received notice of a pattern of unconstitutional acts committed by Nyreen and Mills similar to the conduct alleged here. As explained above, Shaver says he sent multiple kites to

---

[4] Bittinger had authority as Warden to supervise and give orders to Nyreen and Mills, her subordinates at the Penitentiary. The warden, as the chief executive of a correctional facility, has supervisory authority over unit managers and unit coordinators—such as Nyreen and Mills, respectively—who operate within that facility's chain of command.

Bittinger regarding both Nyreen and Mills's failure to adequately deal with the rising tensions between Shaver and his cellmate Burton. *See* Docket 27 ¶¶ 18, 20, 25, 27-29. The record also reflects that, sometime between March and June 2023, Shaver mailed a letter to Bittinger at her office at the Penitentiary, informing her "about everything going on" and stating that Nyreen and Mills were "ignoring issues," *id.* ¶ 18. These repeated complaints describe an ongoing pattern of inaction by Nyreen and Mills in response to Shaver's escalating safety concerns, not an isolated incident. Even if the record included evidence that Bittinger denied receiving Shaver's kites and letter, summary judgment would still be inappropriate because "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Arnett*, 160 F.4th at 926. On this record, there is sufficient evidence from which a reasonable jury could find that Bittinger had notice of Nyreen and Mills's actions—or failures to act—concerning the events underlying Shaver's failure-to-protect claim.

The court likewise finds that, based on the record evidence viewed in the light most favorable to Shaver, a reasonable jury could conclude that Bittinger was deliberately indifferent to the pattern of unconstitutional conduct committed by Nyreen and Mills and failed to take any meaningful remedial action. Because the record shows that it is plausible that Bittinger was on notice of Shaver's conflict with Burton and that Shaver repeatedly informed Nyreen and Mills of his safety concerns, it follows that Bittinger was aware of facts from which a substantial risk of serious harm to Shaver could be inferred,

and that she turned a blind eye towards it. *See Vandevender*, 970 F.3d at 975. A genuine issue of material fact exists as to whether Bittinger's failure to take remedial action allowed the risk to persist and ultimately caused Shaver's injury.

Defendants argue that because Shaver did not challenge their arguments in favor of summary judgment for Bittinger, "Shaver has abandoned these claims and summary judgment should be granted on all of them." Docket 74 at 2-3. While Shaver's lack of opposition is notable, the court "must still determine that the moving party is entitled to judgment as a matter of law on [the] claim." *Calon v. Bank of Am., N.A.*, 915 F.3d 528, 530 (8th Cir. 2019) (internal quotation marks omitted); *Mack v. Dillon*, 594 F.3d 620, 622-623 (8th Cir. 2010) (stating that a nonmoving party's failure to respond does not necessarily result in granting a summary judgment motion). The movant still must satisfy its initial burden of establishing that there are no genuine issues of material fact and must identify those portions of the record "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Here, Shaver's verified amended complaint constitutes sworn evidence that must be considered at summary judgment, and the record therefore contains evidence bearing on Bittinger's alleged knowledge and deliberate indifference. Based on the analysis above, defendants did not satisfy their initial burden of establishing that there are no genuine issues of material facts. Because a reasonable jury could find that Bittinger had supervisory authority

over Nyreen and Mills, knew of a substantial risk of harm to Shaver, acted with deliberate indifference, and failed to take remedial action resulting in Shaver's injury, defendants' summary judgment motion is denied as to the failure-to-supervise claim against Bittinger in her individual capacity for money damages. *See Arnett*, 2024 WL 4372155, at *32-33.

### B. Defendants in their Official Capacities

Shaver sues defendants Mills, Nyreen, Lamb, Fluke, and Johnston in their official capacities, seeking injunctive relief. Docket 27 at 14-16. "When an official capacity claim is asserted for injunctive relief against a state officer, the defense of qualified immunity does not apply." *Bell v. Young*, 2022 WL 4482855, at *8 (D.S.D. Sept. 27, 2022). A suit against an individual prison official in his or her official capacity is not a suit against the official but rather a suit "against the governmental entity itself." *White v. Jackson*, 865 F.3d 1064, 1075 (8th Cir. 2017). Thus, it is a suit against the State itself. The Eighth Circuit has instructed that "in the prison context, a request for injunctive relief must always be viewed with great caution because 'judicial restraint is especially called for in dealing with the complex and intractable problems of prison administration.'" *Goff v. Harper*, 60 F.3d 518, 520 (8th Cir. 1995) (quoting *Rogers v. Scurr*, 676 F.2d 1211, 1214 (8th Cir. 1982)).

Here, Shaver requests that the court order Mills, Nyreen, Fluke, and Johnston "to take training to deal with disabled individuals, and then provide the court with proof that training has occurred." Docket 27 ¶¶ 35-39. He also requests the court order Lamb to provide "a safe environment for plaintiff,

given his mental disabilities." *Id.* ¶ 34. Defendants assert that summary judgment is warranted on Shaver's official capacity claims because the injunctive relief requested "does not relate to his Eighth Amendment claim." Docket 63 at 17. The court agrees with defendants.

A plaintiff seeking injunctive relief "must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam). Here, Shaver's request for an order directing Mills, Nyreen, Fluke, and Johnston "to take training to deal with disabled individuals" is unrelated to his failure-to-protect claim. Nowhere in his amended complaint does Shaver allege that he was assaulted because of a disability or that defendants' failure to protect him was related to his disabled status. *See* Docket 27 ¶¶ 20-30. Similarly, Shaver's request that Lamb provide "a safe environment for plaintiff, given his mental disabilities" is also unrelated to his failure to protect claim. Thus, summary judgment is granted on Shaver's official-capacity claims against Mills, Nyreen, Lamb, Fluke, and Johnston.[5]

### III.  Plaintiff's Motion for Judgment on the Pleadings

Shaver moves for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). Docket 79; Docket 81. In support of his motion, Shaver

---

[5] Mills, Nyreen, and Johnston are also entitled to summary judgment on the official capacity claims because the claims are moot. These defendants are employed at the Penitentiary, but Shaver is now incarcerated at Mike Durfee State Prison in Springfield, South Dakota. *See Martin v. Sargent*, 780 F.3d 1334, 1337 (8th Cir. 1985) (a prisoner's claim for injunctive relief becomes moot when the prisoner is transferred and no longer subject to the conditions of confinement in issue).

contends that defendants have refused to answer any of his requests for admissions, failed to produce any documents, and refused to answer his requests for interrogatories. Docket 79 at 1. As such, Shaver states that the case is ripe for a judgment on the pleadings. *Id.* Defendants responded to Shaver's motion. *See* Docket 82 at 1-2.

This is the second motion for judgment on the pleadings that Shaver has filed based on defendants' alleged refusal to respond to discovery. *See* Docket 55. Shaver also filed motion to compel. *See* Docket 73. The court denied Shaver's initial motion for judgment on the pleadings. *See* Docket 60 at 16-18. The court also denied Shaver's motion to compel. *See* Docket 78. Shaver's second motion for judgment on the pleadings, Dockets 79, 81, is denied for the same reasons his first motion for judgment on the pleadings and motion to compel were denied.

To the extent Shaver's motion could be construed as a Rule 56(d) motion, Shaver has not made the requisite showing to warrant additional time for discovery. Federal Rule of Civil Procedure 56(d) permits a nonmoving party to request that the court defer or deny a motion for summary judgment to allow for discovery of additional evidence to demonstrate the existence of a genuine issue of material fact. Fed. R. Civ. P. 56(d); *Johnson v. Moody*, 903 F.3d 766, 772 (8th Cir. 2018). To warrant additional time for discovery, a party must show

> (1) that they have set forth in affidavit form the specific facts that they hope to elicit from further discovery, (2) that the facts sought exist, and (3) that these sought-after facts are "essential" to resist the summary judgment motion.

27

*Toben v. Bridgestone Retail Operations, LLC*, 751 F.3d 888, 895 (8th Cir. 2014)
(internal quotation omitted). Shaver's motion does not satisfy the requirements
for relief under Rule 56(d). Thus, Shaver's second motion for judgment on the
pleadings, Dockets 79, 81, is denied for this reason as well.

**CONCLUSION**

For these reasons, it is ORDERED that:

1)    Defendants' motion for summary judgment (Docket 62) is granted
      in part and denied in part. The motion is granted with regard to
      Shaver's official capacity claims against Mills, Nyreen, Lamb,
      Fluke, and Johnston. Defendants' motion is also granted with
      regard to Shaver's individual capacity claims against Fluke,
      Johnston, and Wasko.

2)    Defendants' motion for summary judgment is denied as to Shaver's
      individual capacity claims against Nyreen, Mills, and Bittinger.

3)    Shaver's motions for judgment on the pleadings (Docket 79; Docket
      81) are denied.

4)    Shaver's motion for voluntary dismissal without prejudice (Docket
      81) is denied.

Dated January 28, 2026.

BY THE COURT:

*/s/ Karen E. Schreier*
KAREN E. SCHREIER
UNITED STATES DISTRICT JUDGE

28